# FEDERAL BUREAU OF INVESTIGATION
# POLICY NOTICE

## Body-Worn Cameras Policy Notice
## 1216N

## General Information

| | |
|---|---|
| **Proponent** | Operational Technology Division |
| **Publication Date** | July 16, 2022 |
| **Last Updated** | N/A |
| **Supersession** | *Body-Worn Cameras Policy Notice* (1202N) |

## 1. Authorities

- Deputy Attorney General (DAG) Memorandum, "Body-Worn Camera Policy" (June 7, 2021)
- *The Attorney General's Guidelines for Domestic FBI Operations* (AGG-Dom)
- The Privacy Act
- The Federal Records Act
- The Freedom of Information Act (FOIA)

## 2. Purpose

2.1. The purpose of this policy notice (PN) is to immediately implement requirements for the Federal Bureau of Investigation's (FBI) use of body-worn cameras (BWC).

2.2. This PN augments existing FBI policies and practices for conducting certain law enforcement investigations (including collecting evidence and conducting interviews) but does not replace or alter any FBI policies.

2.3. This PN will be superseded by a forthcoming Body-Worn Cameras Policy Guide, which will contain comprehensive processes and procedures for the FBI's use of BWCs upon full implementation.

## 3. Scope

3.1. This PN applies to the following FBI personnel:

3.1.1. Special agents (SA) who are authorized and appropriately equipped to wear and use BWCs.

3.1.2. Federally deputized task force officers (TFO) who are authorized and appropriately equipped to wear and use BWCs.[1]

---

[1] This PN, in its entirety, only applies to TFOs who wear and use FBI-owned BWCs during FBI pre-planned arrests and searches. If federally deputized TFOs are required to wear their home-agencies' BWCs during FBI pre-planned arrests and searches, only subsection 6.2. of this PN applies.

3.1.3. FBI executives overseeing personnel participating in or supporting the use of BWCs.

3.1.4. All FBI personnel responsible for procuring and maintaining BWCs.

3.1.5. All FBI personnel responsible for storing, redacting, and disseminating BWC recordings.

## 4. Exemptions

4.1. There are no exemptions to this PN.

4.2. Requests for departures from this PN must be submitted, reviewed, and approved in accordance with subsection 2.7 of the Domestic Investigations and Operations Guide (DIOG).

## 5. Policy Statement

5.1. FBI personnel must only use FBI-owned BWCs and collect, use, retain, and disseminate BWC recordings for authorized FBI purposes in accordance with the requirements and restrictions in this PN.

5.2. When applying this PN during FBI pre-planned attempts to execute arrest warrants, search or seizure warrants, or other arrests (hereafter FBI pre-planned arrests and searches), SAs and TFOs must prioritize their own safety and the safety of the public over the use of BWCs. When conducting FBI pre-planned arrests and searches, SAs and TFOs must abide by the DIOG, as well as any applicable policies or procedures related to law enforcement officer (LEO) or public safety. If the use of BWCs under this PN conflicts with policies or procedures related to LEO or public safety, FBI personnel must abide by the policies or procedures related to LEO or public safety instead of this PN.

5.3. Nothing in this PN provides a right of public access to BWC recordings. BWC recordings are controlled by, and are the property of, the FBI and the DOJ and will be retained and managed by the FBI. The FBI and the DOJ may only release BWC recordings, including for the purposes of litigation or public dissemination, consistent with federal authorities (e.g., FOIA, Federal Rules of Criminal Procedure, Federal Rules of Civil Procedure, Privacy Act) and the FBI's and the DOJ's policies concerning federal records and discovery obligations, including investigative materials. In accordance with the *Freedom of Information Act and Privacy Act Requests Policy Directive* (1027D), the proactive release of BWC recordings must not be considered a release of information in response to a FOIA or Privacy Act request.

## 6. Roles and Responsibilities

6.1. FBI SAs and TFOs wearing FBI-owned BWCs must:

6.1.1. Complete BWC training and policy attestations in Virtual Academy (VA) facilitated by the Training Division (TD) prior to wearing and using BWCs in FBI pre-planned arrests or searches.

6.1.2. In accordance with DIOG subsections 18.7.1.6.1.6 and 19.2.3, use the FD-888 "Law Enforcement Operations Order" form to plan arrests or searches. FBI SAs and TFOs must specifically document the planned use of BWCs or, when applicable, the reason(s) for not using BWCs (see subsection 6.1.7.) on FD-888s, which must be approved by assistant special agents in charge (ASAC). If applicable, FBI SAs and TFOs must also notate departures from this PN (when approved in accordance with subsection 2.7 of the DIOG) on FD-888s.

6.1.3. Make reasonable efforts to wear and activate their BWCs for the purposes of recording their actions during FBI pre-planned arrests and searches (except as described in subsection 6.1.7.)

6.1.4. Make reasonable efforts to wear and activate their BWCs upon approaching subjects or premises related to FBI pre-planned arrests or searches, as determined by on-scene commanders (OSC) (or designees).

6.1.5. When it is safe and practicable to do so, make reasonable efforts to wear and activate their BWCs during FBI pre-planned arrests or searches if unanticipated circumstances arise that warrant the use of BWCs (e.g., contentious or violent interactions with members of the public that could lead to the use of force).

6.1.5.1. FBI SAs and TFOs may also use BWCs to record investigative activity beyond FBI pre-planned arrests or searches if circumstances develop on-scene that could adversely impact ongoing investigations, such as the destruction of evidence or obtaining of evidence that cannot be preserved by other means.

6.1.6. Make reasonable efforts to deactivate their BWCs when scenes are secured (i.e., a scene is safe and under law enforcement control), as determined by OSCs (or designees).

6.1.7. Not wear BWCs for any of the following:

6.1.7.1. FBI pre-planned arrests or search warrants involving confidential human sources (CHS)

6.1.7.2. FBI pre-planned arrests or search warrants involving undercover employees (UCE)[2] or covert personnel[3]

6.1.7.3. FBI pre-planned arrests or search warrants resulting from Foreign Intelligence Surveillance Court (FISC) orders

6.1.7.4. The execution of search warrants or orders for records or data (in electronic format or otherwise) in which the execution of the warrant or order does not involve the entry of a physical location

6.1.7.5. Searches of property lawfully in government custody or control

6.1.7.6. FBI workplaces (i.e., field offices [FO], resident agencies [RA], and any other FBI-operated facilities) (see the *Image Capturing Devices within FBI Controlled Facilities Policy Directive* [0335D] for additional guidance)

6.1.8. Not use BWCs to record any of the following:

6.1.8.1. On-scene witness interviews conducted before or after FBI pre-planned arrests and searches

---

[2] As a general rule, the presence of authorized UCEs on-scene does not constitute grounds for a BWC exception. FBI personnel must be acting in-role UCEs for the specific operation in question in order for this exception to apply.

[3] For purposes of this PN, "covert personnel" includes only FBI employees who, while conducting any operational activity, must withhold or conceal their identity or affiliation with the FBI or the United States Government, or who must use an assumed name or cover identity, to further the mission of the FBI for one of the following purposes: (1) to maintain the operational security of the investigation or operation by preventing detection or knowledge of the operation by the subject, members of the public, or anyone without a need to know; (2) to protect the law enforcement sensitivity of a technique or tool being employed or supervised by an FBI employee in the course of an operational activity; (3) to ensure the personal safety of an FBI employee; (4) to maintain the viability of an FBI employee's covert status in a current or future operation; or (5) any other official purpose as determined by the OSC analogous to the above listed purposes. This exemption only applies when an employee is acting in a covert capacity for the specific operation in question. This is not a categorical exemption to be used when an individual who performs covert duties is acting in a non-covert role.

6.1.8.2. On-scene actions taken by non-law enforcement persons who are assisting FBI personnel (or other law enforcement personnel) before or after FBI pre-planned arrests and searches

6.1.9. When it is safe and practicable to do so, immediately notify their supervisors if they are involved in or present for an agent-involved shooting (AIS) or use of force incident which may result in administrative inquiry by Inspection Division's (INSD) Office of Inspections during FBI pre-planned arrests or search warrants (see the *Shooting Incident Response Procedures Policy Directive* [0782D]).

6.1.10. In accordance with DIOG subsection 18.5.6.4.16, initiate FD-302s "Investigative Information That May Become Testimony" documenting the use of BWCs as soon as practicable, but no later than five business days following the conclusion of FBI pre-planned arrests or searches.

6.1.10.1. FD-302s must document the names of FBI SAs and TFOs who used BWCs during FBI pre-planned arrests or searches. BWC documentation requirements may be notated on arrest or operation FD-302s.

6.1.10.2. In the event of BWC malfunctions, FD-302s must include details of the occurrences, whether any recordings were made, and if the malfunctions were due to technical error or user error (e.g., SAs or TFOs did not activate their BWCs or initiate recordings).[4]

6.1.10.3. In the event that there are not enough BWCs available for SAs and TFOs at the time of provisioning, SAs and TFOs may participate in FBI pre-planned arrests or searches, but the insufficient supply of BWCs must be documented on FD-302s.

6.1.11. Submit completed FD-302s for approval within the applicable case files.

6.1.12. Return BWCs to BWC custodians (see subsection 6.6.) after completing FBI pre-planned arrests or searches.

6.1.13. Handle all BWC recordings as electronic surveillance (ELSUR) evidence in accordance with the *Storage, Handing, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG).

6.1.14. Prior to the release of BWC recordings outside of the FBI,, including to the United States Attorney's Office or to state or local prosecutors, review BWC recordings proposed for release for relevance (e.g., inadvertent or accidental over-recording prior to or after an FBI pre-planned arrest or search), classification level, compliance with this PN, and sensitive information, including, but not limited to, the identity of covert personnel, CHSs, or UCEs, the use of law enforcement sensitive investigative methods and techniques, or other sensitive circumstances (refer to subsection 6.4.3.3.).

6.1.14.1. Upon reviewing BWC recordings proposed for release outside of the FBI, SAs and TFO must document the conduct and results of the review on FD-302s serialized to the applicable case files. If BWC recordings contain any of the above listed material or other sensitive material, or recordings are not in compliance with this PN, SAs and TFOs must contact their chief division counsel (CDC) or associate division counsel (ADC) or their Office of General Counsel (OGC) legal advisor, as applicable, as well as the Operational Technology Division (OTD) BWC program manager (PM) for further guidance.

6.2. TFOs wearing home-agency BWCs must:

---

[4] In the event that an SA's or a TFO's BWC malfunctions, he or she may continue to participate in the pre-planned arrest or search if his or her involvement is required to complete the operation or to ensure the safety of other law enforcement personnel during the operation.

6.2.1. Wear and use their home-agencies' BWCs in accordance with subsections 6.1.3 through 6.1.6 of this PN. TFOs may activate their home-agency BWCs for shorter durations of time than those dictated by OSCs and required by this PN, but such BWC recordings may not exceed those of the SAs and TFOs wearing FBI-owned BWCs. TFOs wearing and using their home-agencies' BWCs must not wear or use BWCs to record prohibited actions, persons, or events in accordance with subsections 6.1.7. and 6.1.8.

6.2.1.1. In advance of TFOs wearing their home-agencies' BWC equipment during FBI pre-planned arrests or searches, task force supervisors must ensure TFOs' home agencies have provided written documentation of the following via memorandums of understanding (MOUs)[5]:

6.2.1.1.1. The requirement for the TFOs to wear and use the home-agencies' BWC equipment during FBI pre-planned arrests and searches

6.2.1.1.2. Agreement that their TFOs will wear and use their home-agencies' BWCs in accordance with subsection 6.2.1. of this PN before, during, and after any FBI pre-planned arrests or searches

6.2.1.1.3. Agreement that their TFOs will not record prohibited actions, persons, or events in accordance with subsections 6.1.7. and 6.1.8. of this PN before, during, or after any FBI pre-planned arrests or searches

6.2.2. Provide their task force supervisors with copies of any BWC recordings resulting from FBI pre-planned arrests or searches within 48 hours of the conclusion of the operation.

6.2.2.1. BWC recordings obtained from TFOs are to be considered copies, with their home agencies retaining the originals. Upon receipt, SAs and TFOs must serialize obtained BWC recordings as 1As in the appropriate case file in Sentinel with information identifying the TFO who provided the recording, the time and place of the recording, and the BWC equipment used during the FBI pre-planned arrest or search.

6.2.2.2. Consistent with Section 5 of this PN, in all circumstances, BWC recordings obtained from TFOs must be disseminated in accordance with all applicable federal laws, policies, and procedures (e.g., FOIA, Federal Rules of Criminal Procedure, Federal Rules of Civil Procedures, Privacy Act).

6.2.3. If their home agencies have any plans or intentions to release BWC recordings depicting conduct solely by TFOs during an FBI pre-planned arrest or search resulting in the serious bodily injury or death of another person, ensure their home agencies notify the special agent in charge (SAC) of the applicable FO. TFOs must ensure home agencies provide as much advance notice as possible as to the time and manner of the intended release.

6.2.3.1. Following intended release notifications, assistant directors in charge (ADIC) and SACs should coordinate with the TFOs' home agencies to discuss any necessary redactions or withholdings of the BWC recording(s) prior to public release to protect the privacy and other interests of the FBI, law enforcement personnel, or victims. For additional guidance on public release considerations and procedures, refer to subsection 6.4.

6.3. ASACs must:

6.3.1. Ensure that BWCs are worn and used during FBI pre-planned arrests or searches as required by this PN.

[5] For additional guidance on drafting, reviewing, executing, administering, or maintaining MOUs, refer to the *Memorandums of Understanding and Contractual Agreements Policy Guide* (1031PG).

6.3.2. Ensure that FBI SAs and TFOs specifically document the planned use of BWCs, or the reason(s) for not using BWCs, on FD-888s.

6.3.3. Serve as the final approvers for FD-888s, in accordance with DIOG subsection 18.7.1.6.1.1.

6.3.4. If applicable, ensure that departures from this PN (when approved in accordance with subsection 2.7 of the DIOG) are notated on FD-888s.

6.3.5. Establish procedures for the processes of obtaining and returning BWC equipment by SAs and TFOs for use in FBI pre-planned arrests and searches.

6.3.5.1. (U/FOUO) ASACs must designate personnel to assist in the provisioning and maintenance of BWCs within their areas of responsibility (AOR). If these individuals are not SAs or TFOs, ASACs must ensure BWC custodians have completed TD's BWC VA training prior to executing their responsibilities in accordance with subsection 6.6.

6.4. ADICs and SACs must:

6.4.1. Ensure that BWCs are worn and used during FBI pre-planned arrests or searches as required by this PN.

6.4.2. Follow the procedures outlined in the *Shooting Incident Response Procedures Policy Directive* (0782D) and instructions from INSD if an FBI SA or TFO wearing a BWC is involved in or present for an AIS or use of force incident under administrative inquiry by INSD's Office of Inspections.

6.4.3. As soon as practicable after receiving notification that SAs or TFOs wearing and using BWCs have been involved in an AIS or a use of force incident under administrative inquiry by INSD's Office of Inspections, review the applicable BWC recording(s) to determine whether public release of the recording(s) is appropriate and whether redactions are required prior to release.

6.4.3.1. ADICs and SACs must complete these reviews in consultation with the Deputy Director's (DD) Office, INSD, the AD of the Office of Public Affairs (OPA), the applicable U.S. Attorney's Office (USAO), and any other federal, state, local, tribal, or territorial law enforcement agencies whose personnel are captured in the recording(s).

6.4.3.2. Additionally, ADICs and SACs must consult CDCs or ADCs to ensure compliance with applicable federal laws (e.g., the Federal Records Act, Privacy Act, and FOIA) and obtain a determination from the applicable USAO as to whether public release may violate any federal, local, or court rules regarding disclosure in pending investigations or prosecutions.

6.4.3.2.1. To the extent any request for BWC recordings concerns pending or potential civil claims or suits concerning AIS or use of force incidents, CDCs and ADCs must, additionally, consult OGC's Civil Litigation Unit (CLU) prior to the redaction and release of any BWC recording(s).

6.4.3.2.2. To ensure continuity of effort across the FBI, ADICs and SACs must consult with the Information Management Division's (IMD) Record/Information Dissemination Section (RIDS) and OGC's FOIA Litigation Unit (FLU) prior to the redaction or release of any BWC recording(s). To the extent the release of BWC recordings is pursuant to a request from an individual other than an FBI executive as described in this PN, requests for BWC recordings must be lawful under federal law, as determined by FLU, and processed by RIDS.

6.4.3.3. As part of these reviews, ADICs and SACs must also determine what content, if any, must be redacted prior to public release. Redactions may be appropriate based on a variety of circumstances. For example, ADICs and SACs may authorize the redaction of BWC

recordings that capture: information about sensitive investigative matters (SIM), public corruption investigations, or national security investigations; the inside of medical facilities or ongoing medical treatment; the use of sensitive or specialized techniques, minors or child sexual abuse material (CSAM); incidents under administrative inquiry by INSD's Office of Inspections (e.g., an AIS or use of force incident); or the injury or fatality of an SA or TFO. ADICs and SACs must ensure that classified information, Law Enforcement Sensitive (LES) information, and recordings capturing prohibitions (see subsections 6.1.7. and 6.1.8.) are either redacted prior to, or entirely withheld from, public release.

6.4.3.3.1. Original BWC recordings, as well as any redacted copies, must be handled and retained in accordance with the *Storage, Handling, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG). Destruction of original BWC recordings or any redacted copies is not authorized until a retention period is established under a records schedule approved by the National Archives and Records Administration (NARA).

6.4.3.4. Following the review and consultative process as outlined in this PN, the SAC or ADIC will approve the recording(s) for public release, unless the SAC or ADIC, in consultation with the DD (or designee), determines that there are specific and compelling grounds justifying withholding the release that cannot be resolved by redaction, withholding portions of the BWC recording(s), or other means. Decisions to withhold the release of BWC recording(s) in these circumstances requires approval from the DD and must be consistent with applicable federal laws (e.g., the Federal Records Act, Privacy Act, and FOIA).

6.4.3.5. If the SAC or ADIC determines that exigent circumstances, including the need to maintain public safety or preserve the peace, necessitate accelerating release of BWC recordings, the ADIC or SAC must devote necessary resources to review, redact, and publicly release the BWC recording(s) at the earliest possible time, but no later than 72 hours after determining that exigent circumstances exist.

6.4.4. Review and approve or deny requests for the public release of BWC recordings (unrelated to incidents involving serious bodily injury or death) following the processes described in subsections 6.3.3.1. through 6.3.3.4. of this PN.[6]

6.5. OSCs (or designees), as designated per the FD-888, must:

6.5.1. Ensure that BWCs are used during FBI pre-planned arrests or searches as required by this PN.

6.5.2. Instruct SAs and TFOs to activate and deactivate their BWCs during FBI pre-planned arrests or searches in accordance with this PN.

6.5.3. Follow the procedures outlined in the *Shooting Incident Response Procedures Policy Directive* (0782D) and instructions from INSD if SAs or TFOs wearing or using BWCs are involved in or present for an AIS or use of force incident under administrative inquiry by INSD's Office of Inspections.

6.6. BWC custodians must:

6.6.1. Maintain custody of BWCs (and associated equipment) when they are not in use by SAs or TFOs for FBI pre-planned arrests or searches.

6.6.2. Facilitate the issuance of BWCs to SAs and TFOs before FBI pre-planned arrests or searches.

6.6.3. After FBI pre-planned arrests or searches are completed, facilitate the return of BWCs and the transfer of BWC recordings (as soon as possible, but within ten business

---

[6] This provision only applies to the public release of BWC recordings. For policy guidance on releasing information to federal crime victims, see the *Victim Services Policy Guide* (1010PG).

days) in accordance with the *Storage, Handling, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG).[7]

6.7. The FBI's privacy and civil liberties officer (PCLO)[8] must:

6.7.1. Coordinate with the Information Technology Applications and Data Division (ITADD) and the OTD to conduct a Privacy Impact Assessment (PIA) on the FBI's overall use of BWCs (and associated equipment) prior to enterprise-wide deployment of BWC technology. The PIA must be completed in a manner that is approved by the DOJ chief PCLO.

6.7.2. As appropriate, advise and make recommendations to the Director (and the DAG) regarding the FBI's use of BWCs (consistent with applicable privacy and civil liberties protections).

6.7.3. Ensure compliance with established procedures for reviewing, investigating, and addressing complaints regarding alleged violations of privacy or civil liberties (see the *Privacy Policy Guide* [1113PG]).

6.8. TD must:

6.8.1. Develop and implement BWC training, in coordination with the Criminal, Cyber, Response, and Services Branch (CCRSB), the National Security Branch (NSB), the Science and Technology Branch (STB), and the Information and Technology Branch (ITB).

6.8.2. Train SAs, TFOs, and BWC custodians on the proper use of BWCs (e.g., legal and policy requirements, activating and deactivating BWCs, and procedures for transferring and managing BWC recordings).

6.9. OTD and the Finance and Facilities Division (FFD), in consultation with CCRSB, NSB, and ITB, must evaluate and procure BWC equipment for FBI SAs and TFOs consistent with existing policies and procedures.

6.9.1. No other BWC equipment may be authorized for use by FBI SAs and TFOs.

6.9.2. The BWC equipment selected by OTD must have the capability to preserve video recording data (i.e., a "buffering" period) for at least one minute prior to activation.

6.10. OTD must:

6.10.1. Consult with CCRSB, NSB, and ITB to establish and implement a plan for maintenance of BWC equipment at FBI workplaces consistent with this PN.

6.10.2. Make BWC recordings available to FBI personnel for use in applicable and authorized investigations.

6.10.2.1. OTD personnel must complete ELSUR training in accordance with the requirements in subsection 4.15. of the *Storage, Handling, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG) prior to handling and processing BWC recordings.

6.10.3. Determine the equipment and processes to be used for storage of BWC recordings, consistent with FBI policies.

6.10.4. Preserve BWC recordings in a manner consistent with federal law (e.g., the Federal Records Act, Privacy Act, and FOIA) and DOJ and FBI policies and procedures.

---

[7] In accordance with the *Technical Personnel and Technical Equipment and Use Policy* (0631DPG), this responsibility must not be completed by TTAs or telecommunication specialists (TS).

[8] The FBI's PCLO (also referred to as the FBI's senior component official for privacy [SCOP]) is currently the deputy general counsel (DGC) of OGC's Investigative and Administrative Law Branch (IALB). See the *Privacy Policy Guide* (1113PG) for additional information.

6.10.5. Complete all appropriate privacy documentation in coordination with the OGC.

6.10.6. Coordinate with OGC to conduct privacy reviews of the FBI's use of BWCs to ensure compliance with all applicable laws, regulations, and policies relating to the protection of privacy and civil liberties.

6.11. IMD, in consultation with OTD and ITADD, must implement appropriate records schedules for the records generated as a result of BWC use.

## 7. References

- DIOG
- *Storage, Handling, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG)[9]
- *Shooting Incident Response Procedures Policy Directive* (0782D)
- *Privacy Policy Guide* (1113PG)
- *Technical Personnel and Technical Equipment and Use Directive and Policy Guide* (0631DPG)

## 8. Definitions and Acronyms

8.1. Acronyms

| | |
|---|---|
| ADC | associate division counsel |
| ADIC | assistant director in charge |
| AGG-Dom | *The Attorney General's Guidelines for Domestic FBI Operations* |
| AIS | agent-involved shooting |
| AOR | area of responsibility |
| ASAC | assistant special agent in charge |
| BWC | body-worn camera |
| CCRSB | Criminal, Cyber, Response, and Services Branch |
| CDC | chief division counsel |
| CHS | confidential human source |
| CLU | Civil Litigation Unit |
| CSAM | child sexual abuse material |

[9] The *Storage, Handling, and Processing of Electronic Surveillance Evidence Policy Guide* (1041PG) will be updated to include processes and procedures for handling BWCs as ELSUR evidence.

| | |
|---|---|
| DAG | Deputy Attorney General |
| DD | Deputy Director |
| DGC | deputy general counsel |
| DIOG | *Domestic Investigations and Operations Guide* |
| DOJ | Department of Justice |
| ELSUR | electronic surveillance [evidence] |
| FBI | Federal Bureau of Investigation |
| FFD | Finance and Facilities Division |
| FISC | Foreign Intelligence Surveillance Court |
| FLU | Freedom of Information Act Litigation Unit |
| FO | field office |
| FOIA | Freedom of Information Act |
| IALB | Investigative and Administrative Law Branch |
| IMD | Information Management Division |
| INSD | Inspection Division |
| IPO | Internal Policy Office |
| ITADD | Information Technology Applications and Data Division |
| ITB | Information and Technology Branch |
| LEO | law enforcement officer |
| LES | Law Enforcement Sensitive |
| NARA | National Archives and Records Administration |
| NSB | National Security Branch |
| OGC | Office of the General Counsel |
| OPA | Office of Public Affairs |
| OSC | on-scene commander |
| OTD | Operational Technology Division |

| | |
|---|---|
| PCLO | privacy and civil liberties officer |
| PG | policy guide |
| PIA | Privacy Impact Assessment |
| PM | program manager |
| PN | policy notice |
| RA | resident agency |
| RIDS | Record/Information Dissemination Section |
| SA | special agent |
| SAC | special agent in charge |
| SCOP | senior component official for privacy |
| SIM | sensitive investigative matter |
| STB | Science and Technology Branch |
| TACOPS | Tactical Operations Section |
| TD | Training Division |
| TFO | task force officer |
| TS | telecommunication specialist |
| TTA | technically trained agent |
| UCE | undercover employee |
| USAO | United States Attorney's Office |
| VA | Virtual Academy |

**DIOG Provision**

This PN is solely for the purpose of internal FBI guidance. It is not intended to, does not, and may not be relied upon to create any rights, substantive or procedural, enforceable by law by any party in any matter, civil or criminal, nor does it place any limitation on otherwise lawful investigative and litigative prerogatives of the DOJ and the FBI.

No policy may contradict, alter, or otherwise modify the standards of the DIOG. Requests for DIOG modifications can be made to the Internal Policy Office (IPO), pursuant to DIOG subsection 3.2.2, paragraphs (A), (B), (C), and (D).

| Approvals | |
|---|---|
| **Sponsoring Executive Approval** | |
| **Name** | **Title** |
| | Assistant Director<br>Operational Technology Division |
| **Stakeholder Executive Approval** | |
| **Name** | **Title** |
| | Executive Assistant Director<br>Science & Technology Branch |
| **Final Approval** | |
| **Name** | **Title** |
| | Deputy Director |