# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                     )

UNITED STATES OF AMERICA,  )
    *Plaintiff,*          )

v.                 ) Docket No. 3:25-CR-30007

JUDITH PEPE,         )
    *Defendant.*        )
_____)

---

## MEMORANDUM OF LAW IN SUPPORT OF

## DEFENDANT'S MOTION TO COMPEL PRODUCTION OF BODY-WORN-CAMERA POLICIES

---

The Defendant's motion should be allowed because the requested policies are material and exculpatory.

## FACTS

According to the written reports of various agents of the Federal Bureau of Investigation ("FBI"), the Defendant spat on a federal agent while he was present to execute a search warrant at her home. (Affidavit of Counsel ¶¶ 2-3; Exhibit 1 (Report of Curtis Robert Sullivan.)

Each agent executing the warrant was wearing a body worn camera ("BWC"), and the footage was provided to defense counsel

pursuant to Fed. R. Crim. P. 16(a)(1)(B) and Local Rule 116.1(c)(1)(A). (*Id.* ¶ 4.)

The body worn camera footage includes contentious interactions during which the Defendant refers to the agents as fascists, denigrates their conduct and motives, and suggests that they intend to steal items from her home. (*Id.* ¶ 5.) However, the footage from the agents' BWCs does not include footage of spitting or other assaultive behavior by the Defendant. (*Id.* ¶ 6) There is no report that any BWC malfunctioned on the date in question. (*Id.* ¶ 7.)

On the existing BWC footage, the Defendant is not bruised or injured and is not engaging in assaultive conduct. (*Id.* ¶ 8.)Then the agents turned off their cameras. When the interaction was over, the Defendant had visible injuries, and the agents were claiming she spat on them. (*Id.* ¶ 9.)

The Defendant requested the currently applicable BWC policies and procedures from AUSA Thomas Barnico, in writing on or about June 17, 2025. (*Id.* ¶ 10 and Exhibit 2.)

On September 30, 2025, AUSA Barnico produced subsection 4.1 of the RBI Body-Worn Cameras Policy Guide (1342PG), which provides, in relevant part, as follows:

> Unless an exemption is granted pursuant to subsection 4.2. of this PG, FBI SAs and TFOs trained and equipped under the terms of this PG must wear and activate BWCs during the execution of any pre-planned arrest or search. For the purposes of this PG, the term 'pre-planned' with respect to FBI operations refers to an arrest warrant or a search and seizure warrant that is being executed pursuant to an appropriately authorized FD-888.8 With respect to non-FBI operations, 'pre-planned' refers to a planned attempt to execute an arrest or search. Pursuant to the execution of an arrest warrant or a search and seizure warrant, where there is an FD-888 and no exemption granted pursuant to subsection 4.2. of this PG, BWCs must be worn and activated on or prior to approaching the scene and must remain activated as long as the wearer is actively engaged in the performance of their assigned duty or until instructed to deactivate by the OSC.

(Affidavit of Counsel ¶ 11 and Exhibit 3.)

On October 7, 2025, AUSA Barnico notified the court and the Defendant (through counsel) that subsection 4.2 did not include an exemption that would have been applicable to the recording at issue in this case. (Affidavit of Counsel ¶ 12 and Exhibit 4 at 7-8.) He also notified that court that subsection 4.7 imposed certain reporting requirements in the event of equipment malfunction. (*See* Exhibit 4 at 8.)

On November 18, 2025, AUSA Barnico notified counsel for the Defendant that the government did not intend to produce subsection 4.2, cited therein. (Affidavit of Counsel ¶ 13 *and* Exhibit 5.)

3

This motion followed.

## ARGUMENT

The requested information is exculpatory and material because it will reveal that the FBI agents on the scene intentionally turned off their BWCs in violation of applicable policies so as to avoid recording their interactions with the Defendant.

"Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and the item is material to preparing the defense." Fed R Crim P 16(a)(1)(E)(i).

It is undisputed that exculpatory evidence, including impeachment evidence, is "material" for this purpose. *Brady v. Maryland*, 373 U.S. 83 (1963); *Giglio v. United States*, 405 U.S. 150 (1972). On retrospective (post-conviction) review, whether an item is "material to preparing the defense" may depend on whether it would have "enabled the defendant significantly to alter the quantum of proof in his favor[,]" *United States v. Ross*, 511 F.2d 757, 762 (5th Cir. 1975), quoted in *United States v. Goris*, 876 F.3d 40, 44-45 (1st Cir.

2017). The First Circuit has held that "significant alteration" for this purpose "may take place in a myriad of ways, such as uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal." *Goris*, 876 F.3d at 45, quoting *United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993)) (quotation marks omitted). In *Lloyd*, the D.C. Circuit held that, as described above, "[t]his materiality standard normally is not a heavy burden[.]" *Lloyd*, 992 F.2d at 351.

The Second Circuit has defined materiality succinctly as evidence that "could be used to counter the government's case or to bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993); cited and discussed in *United States v. Bulger*, 928 F. Supp. 2d 305, 324 (D. Mass. 2013).

If, as it appears, the agents in this case violated policy by turning off their cameras, the existence of the policy is both material and exculpatory. Turning off BWCs in violation of policy tends to indicate professional incompetency by the agents who disregarded clearly applicable rules. The professional incompetency of the agents who interacted with the Defendant is material on its face. If the agents were unable to follow their training in this simple respect, testimony

5

or argument to the effect that they followed training in other respects is undermined.

To the extent that the failure to follow the BWC policy predictably interfered with the collection of audio-visual recorded evidence, the failure specifically undermines the credibility of any testifying agents.

A decision to *deactivate* a BWC, without more and even regardless of applicable policies, may cast some doubt on the credibility of a law-enforcement witness. *See Knopek v. City of Warren*, No. 23-13028, 2025 U.S. Dist. LEXIS 99139, at *25 (E.D. Mich. Mar. 19, 2025). But even failing to turn on a BWC –a less clearly nefarious act than affirmatively deactivating one - may be sufficient to support an adverse credibility finding if the failure violates an applicable policy. *See Goodwin v. City of Painesville*, 781 F.3d 314, 322-23 (6th Cir. 2015) (finding that a failure to activate a recording device against police department policy could weigh against an officer's credibility).[1] Whether the failure violated a written, applicable policy is important to the interpretation. An officer may

---

[1] But see *Bannon v. Godin*, 99 F.4th 63, 100 (1st Cir. 2024) (granting summary judgment and holding *in dicta* that the First Circuit has not held that the mere failure to activate a BWC necessarily weighs against credibility).

exercise discretion to turn off a BWC for many reasons if the action is not prohibited, and not every reason detracts from his credibility. *See e.g. United States v. Wright*, No. 2:21-cr-00024-APG-DJA, 2023 U.S. Dist. LEXIS 167407, at *9-10 (D. Nev. Aug. 15, 2023) (declining to make an adverse credibility finding on ground absent proof that a policy requiring searches to be recorded was in effect when officers turned off their BWCs).[2] Turning off a BWC is suspicious, but turning off a BWC in explicit violation of a policy is very, very suspicious.

Relatedly, this court has previously held that the possibility that a requested item might contain evidence of the complaining witness's attempt to alter or delete data makes the item "material." *See United States v. Akula*, No. 3:19-cr-30039-MGM, 2020 U.S. Dist. LEXIS 63891, at *7-9 (D. Mass. Apr. 13, 2020) (citing *Pettiway v. Vose*, 100 F.3d 198, 201 (1st Cir. 1996)). *Akula* stands for the proposition that a complainant's attempt to destroy evidence is material because it undermines the complainant's credibility.

The reasoning of the *Akula* and *Pettiway v. Vost* decisions applies here as well. Turning off BWCs in violation of FBI policy is

---

[2] Deactivation is distinct from mere failure to activate.

similar to destroying evidence. It is intentional conduct undertaken specifically and solely to interfere with the lawful collection of evidence. Thus, it is likewise material to the jury's credibility determination.

In short, the absence of any applicable exception to the recording requirement in this case is material to the credibility determination of each and every testifying agent and is exculpatory because it will show that the agents violated the policy.

Subsection 4.2 is exculpatory. This is not a fishing expedition for policies that may be exculpatory but may not be. AUSA Barnico has already proffered that subsection 4.2 will prove the lack of any applicable exceptions that would have excused the non-recording in this case.

Subection 4.7 is potentially exculpatory because, in the event that any witness claims his camera was not deactivated but rather malfunctioned in some way, he can be impeached with the reporting requirement.

## CONCLUSION

For the reasons stated in the Defendant's motion, as argued here, and in the attached materials, the Defendant's Motion to Compel should be allowed.

Respectfully Submitted,
JUDITH PEPE,
By Counsel,
*/s/ Dana Goldblatt*
Massachusetts BBO# 601022
The Law Office of Dana Goldblatt
150 Main Street, Ste 28
Northampton, MA 01060
413-570-4136
dana@danagoldblattlaw.com

9

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
UNITED STATES OF AMERICA,     )
    *Appellee,*                         )
                                          )
    v.                                    ) Docket No. 3:25-CR-30007
                                          )
JUDITH PEPE,                        )
    *Defendant-Appellant.*             )
_____)

---

## CERTIFICATE OF SERVICE

---

I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered Participants as identified on the Notice of Electronic Filing (NEF) on December 5, 2025.

    Respectfully Submitted,
    JUDITH PEPE,
    By Counsel,
    */s/ Dana Goldblatt*
    Massachusetts BBO# 601022
    The Law Office of Dana Goldblatt
    150 Main Street, Ste 28
    Northampton, MA 01060
    413-570-4136
    dana@danagoldblattlaw.com

1