UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL No. 3:25-cr-30007-MGM |
| v. | |
| JAMES G. PEPE, III, | |
| Defendant | |

### REPLY TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

The United States of America, through its attorney, Assistant U.S. Attorney Thomas A. Barnico, Jr., requests that the Court deny Defendant's Motion to Compel Production of Body-Worn Cameras Policies. ECF No. 57. Specifically, the Defendant moves the Court to compel the government to produce Subsections 4.2 and 4.7 of the FBI Body-Worn Cameras Policy Guide 1343PG, arguing that these Subsections are exculpatory and material to the defense. The Court should deny defense counsel's motion because the government has satisfied its discovery obligations and Subsections 4.2 and 4.7 are neither exculpatory nor material.

## I.    FACTUAL BACKGROUND

On February 4, 2025, FBI agents and other law enforcement agents executed a federal search warrant at the residence of Ryan "Riley" English in South Deerfield, Massachusetts. ECF No. 1, Affidavit in Support of Complaint, ¶ 3 (herein, "Compl. Aff."). At the time, English was in federal custody after English was arrested for attempting to assassinate political appointees on the grounds of the United States Capitol in Washington, D.C. English's roommate – the Defendant – was at the South Deerfield residence when the search warrant was executed. *Id.* at ¶¶ 3-8. While the agents were in transit to the South Deerfield residence, they activated their

body-worn cameras. Upon arrival at the residence, FBI Agents knocked on the Defendant's door and announced their presence and purpose – FBI agents executing a federal search warrant. *Id.* at ¶ 5. After the Defendant opened the door, FBI Agents allowed the Defendant to gather warm clothing and some belongings from the residence and brought the Defendant into a shared indoor stairwell. *Id.* at ¶ 6. Given the nature of the charges against English (including violations of 40 U.S.C., Section 5104 – Carrying a Firearm, Dangerous Weapon, Explosive, or Incendiary Device on the Grounds of the Capitol), a security sweep of the residence was necessary. *Id.* at ¶¶ 3, 6.

After FBI agents inspected the residence for threats to their safety – including other people, weapons, explosives, and/or incendiary devices – they deemed the residence secure. *Id.* at ¶ 6. The FBI officer in command of the scene (herein, "On Scene Commander" or "OSC") then directed all agents to deactivate their body-worn cameras. FBI agents then brought the Defendant back into the residence and asked the Defendant to sit in a chair in the kitchen and the Defendant complied. *Id.* at ¶ 6. The Defendant was not handcuffed at this time. *Id.*

Shortly thereafter, the Defendant became visibly agitated – yelling insults, taunts, and threats at the FBI agents - including threatening to spit in the face of FBI Agent Michael Sheehan. *Id.* at ¶ 7. FBI agents warned that if the Defendant could not calm down and allow agents to complete the search, the Defendant would be detained. *Id.* at ¶ 7. The Defendant's aggression persisted, which made conducting the search safely and efficiently impossible. *Id.* FBI agents handcuffed the Defendant and intended to briefly detain the Defendant in a law enforcement vehicle so as to complete the execution of the federal search warrant. *Id.* at 8. The Defendant could be heard hocking saliva while being handcuffed. *Id.* While the Defendant was handcuffed and exiting the residence, the Defendant spat in an FBI Agent's face. *Id.* at 8. The

Defendant was then placed under arrest for assaulting a federal agent while in the performance of his duties. According to the FBI-302 of Special Agent Robert Curtis, the Defendant asked multiple agents "Why do they make it illegal to spit in your faces when you have such spit-able faces." Goldblatt Aff., Exhibit 1.

## II.    PROCEDURAL BACKGROUND

The government provided its automatic discovery disclosures, including all body-worn camera footage[1], to defense counsel on April 30, 2025. ECF. No. 24. On June 17, 2025, defense counsel requested, via email, "the policies applicable body camera usage by the officers, agents, or troopers who were present at the scene of Ms. Pepe's arrest. If you can act on this email, excellent. But please let me know if you need a more formal request." Goldblatt Aff., Exhibit 2. The government agreed to inquire with FBI legal counsel about the defendant's emailed request, deeming it a reasonable inquiry given the facts, at the time. FBI legal counsel consented to loaning the government a copy of Subsection 4.1 "Authorized Uses of Body-Worn Cameras" of the FBI Body-Worn Cameras Policy Guide 1343PG. The government reviewed Subsection 4.1 and - with the consent of FBI legal counsel - agreed to produce it to defense counsel pursuant to an agreement that she not disseminate it outside of her defense team and the Defendant. Defense counsel declined to enter this agreement and brought her first Motion to Compel Discovery. ECF No. 32.

After defense counsel filed her first motion to compel discovery, the government agreed to provide Subsection 4.2 to defense counsel and filed a reply arguing that defense counsel's motion should be denied as moot. ECF No. 42.[2] The government informed defense counsel and

---

[1] Government bates stamp numbers PEPE-000014 – PEPE-000025. Upon request, the Government will provide a copy of all body-worn camera footage to the Court.
[2] The government at no point conceded that FBI Policies and Procedures are material and/or exculpatory.

the Court that it would review other FBI policies related to body-worn cameras and would produce any relevant and material documents to defense counsel. ECF No. 44. On October 7, 2025, the government reviewed the entirety of the FBI Body-Worn Cameras Policy Guide 1343PG at the FBI's Springfield Office and reported to the Court and defense counsel a summary of its review. Goldblatt Aff., Exhibit 4. The government reported that, upon its review, no other policies or procedures within 1343G were relevant or material and thus the government was declining to produce additional materials. *Id.* Specifically, the government informed the Court and defense counsel that Subsections 4.2 and 4.7 – which are referenced in Subsection 4.1 – are not relevant and/or immaterial to the defense. The government stated, albeit ineloquently, the following:

> "[S]ubsection 4.2 refers to, … prohibited and exempted uses for body-worn cameras. That would include issues with safety of agents when they're executing at … third-party businesses, like hospitals and banks, … government properties, and then other covert tasks where the safety of officers or cooperating individuals would be compromised by the use of body-worn cameras… Subsection 4.2 essentially provides exemptions and prohibited uses. But I can confirm for defense counsel today, and I can put this in a discovery letter as well, that subsection 4.2 provides no exemption, so there's no loophole lingering in 4.2.
>
> And then, with regards to [Subsection] 4.7, the other subsection that's referenced in the provided materials in 4.1, subsection 4.7 is with regards to just the requirement that an FBI 302 report be written within five days regarding FBI use of body-worn cameras [detailing] any unanticipated non-uses or not enough body – enough body-worn cameras are around or malfunctions [ ] need to be reported in those 302s."

Goldblatt Aff., Exhibit 4, pp.7-8.

On December 5, 2025, defense counsel filed the instant motion, requesting the Court compel the government to produce the above-described Subsections 4.2 and 4.7 on the basis that they are exculpatory and/or material.

### III.    LEGAL BACKGROUND

Outside of automatic discovery after arraignment, the government's principal discovery obligations are described under Federal Rule of Criminal Procedure 16(a)(1)(E). Namely, "[u]pon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of the items, if the item is within the government's possession, custody, or control and: (i) the item is material to preparing the defense; or (ii) the government intends to use the item in its case-in-chief at trial." Fed. R. Crim. P. 16(a)(1)(E).

The defendant bears the initial burden of showing that the items sought are material, that is, provide at least some indication that disclosure of the information "would … enable the defendant significantly to alter the quantum of proof in his favor." *United States v. Goris*, 976 F.3d 40, 44-45 (1st Circ. 2017) (quoting *United States v. Ross*, 511 F.2d 757, 763 (5th Cir. 1975)). "If . . . a defendant's discovery request is grounded in a speculative theory, a district court's decision to deny that request is not an abuse of discretion." *Id.*

The government also has an affirmative duty to disclose "*Brady* material," that is, "information in its possession that is favorable to the defendant and material to the question of guilt or punishment." *See United States v. Tsarnaev*, 2013 U.S. Dist. LEXIS 168847, at *1 (D. Mass. Nov. 27, 2013). "*Brady* material" includes information that is "*directly* exculpatory in that it casts doubt on the defendant's guilt, and that which is *indirectly* exculpatory, in that it tends to

impeach the reliability of the prosecution evidence." *Id.* (emphasis added). With regards to the government's possession, custody, or control of potential discovery, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police…" *Kyles v. Whitley*, 514 U.S. 419, 432-33 (1995). Furthermore, "[E]vidence 'within [the government's control] includes exculpatory information in the possession of any agency that participated in the investigation of the crime charged." *Id.*

"The government is primarily responsible for deciding what evidence it must disclose to the defendant under *Brady*' and such decision is generally final unless it is later shown that exculpatory evidence was not disclosed. If a defendant seeks access to specific materials that the government contends are not discoverable under *Brady*, the defendant must make some showing that the material in question could contain favorable, material evidence. That showing cannot be based on speculation." *United States v. Akula*, No. 3:19-cr-30039-MGM, 2020 U.S. Dist. LEXIS 63891, at *5 (D. Mass. Apr. 13, 2020) (internal citations and quotations omitted).

## IV.    ARGUMENT

Subsections 4.2 and 4.7 are not exculpatory or material to the defense and thus the Defendant's motion should be denied. Defense counsel argues that "[t]urning off a BWC is suspicious, but turning off a BWC in explicit violation of a policy is very, very suspicious." (Def. Mot. 7). Despite having FBI Subsection 4.1 (Goldblatt Aff., Exhibit 3) and the body-worn camera footage (PEPE-000014 – PEPE-000025) at hand, defense counsel fails to articulate how FBI agents explicitly violated Subsection 4.1. Instead, defense counsel speculates that because the government admits no prohibited use or exemption is applicable under Subsection 4.2, it must be exculpatory and/or material. This wholly ignores the possibility – and indeed the reality – that Subsection 4.2 is not material or exculpatory because FBI agents *complied* with

Subsection 4.1.

FBI agents and other law enforcement personnel activated their body-worn cameras while in transit to the Defendant's home, kept their BWCs activated while approaching/entering the home and conducting a security sweep, and only deactivated their body-worn cameras when directed to do so by the On-Scene Commander ("OCS"). PEPE-000014 – PEPE-000025. In relevant part, Subsection 4.1 states, "BWCs must be worn and activated on or prior to approaching the scene and must remain activated as long as the wearer is actively engaged in the performance of their assigned duty or until instructed to deactivate by the OSC." Goldblatt Aff., Exhibit 3, p. 3. The FBI agents complied with Subsection 4.1. Subsection 4.2's prohibited uses and exemptions from the authorized use requirements under Subsection 4.1 are admittedly inapplicable but, more importantly, inconsequential. As shown in the BWC footage provided to defense counsel, FBI agents complied with Subsection 4.1.

Furthermore, even if FBI Agents violated Subsection 4.1 by deactivating their BWCs – which they did not – the government reviewed Subsection 4.2 at the FBI Springfield Office and confirmed for defense counsel that it does not contain any applicable prohibited uses or exemptions. Thus, the government fulfilled its duty to inspect documents in the possession of the FBI for any exculpatory or material information.

Lastly, with regards to Subsection 4.7, defense counsel argues that it is "potentially exculpatory because, in the event that any witness claims his camera was not deactivated but that rather malfunctioned in some way, he can be impeached with the reporting requirement." Def. Mot. at 8. Defense counsel's argument is, again, purely speculative and thus the Defendant's burden has not been met. Furthermore, even if an FBI agent violated Subsection 4.7's requirement that malfunctioning equipment be timely documented, it stretches the imagination to

envision how such a violation would exculpate – either directly or indirectly – the Defendant or

significantly alter the quantum of the evidence in favor of defense.

**V.    CONCLUSION**

For the reasons stated above, the Court should DENY the Defendant's Motion to Compel

Discovery. Should the Court allow the Defendant's Motion, the government requests leave to

file a Motion for a Protective Order over the compelled production.

Date:  December 20, 2025                                 Respectfully submitted,

                                                        LEAH B. FOLEY
                                                        United States Attorney

                                                By:  */s/ Thomas A. Barnico, Jr.*
                                                        Thomas A. Barnico, Jr. (BBO#696929)
                                                        Assistant United States Attorney
                                                        United States Attorney's Office
                                                        300 State Street, Suite 230
                                                        Springfield, MA 01105

## <u>CERTIFICATE OF SERVICE</u>

I, Thomas A. Barnico, Jr., hereby certify that the foregoing was filed through the Electronic Court filing system and will be sent electronically to the registered participants as identified on the Notice of Electronic filing.


Date: December 20, 2025

/s/ Thomas A. Barnico, Jr.
Thomas A. Barnico, Jr.

Assistant United States Attorney